**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 18-CR-10001-MARTINEZ**

**UNITED STATES OF AMERICA**

**v.**

**RICHARD STEVEN JOHNSON and**
**JARRED ALEXANDER GOLDMAN,**

   **Defendants.**
_____/

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

For nearly thirty years, the Mel Fisher Maritime Heritage Museum proudly displayed a 17th-century gold bar in a unique "Lift a Gold Bar" exhibit, allowing visitors from around the world the exclusive experience of holding and interacting with a piece of history.   On August 18, 2010, the defendants in this case stole that centerpiece exhibit, and in the days that followed, they callously hacked it to pieces and sold it for scrap gold.   The defendants then ignored the Museum's pleas for help in recovering their artifact over the next five years, and were only brought to justice due to an anonymous tip that led to their identification and arrest.   All that remains of the priceless historical artifact stolen by the defendants is a tiny fragment of the original bar.   The rest of the artifact will likely never be recovered.

The defendants now seek to escape punishment for their actions, asking this court to vary downward from the sentencing guidelines range in this case.   However, the reality is that the guidelines fail to account for the substantial harm inflicted by the defendants and their nearly eight-year attempt to remain unaccountable for this crime.   Accordingly, for the reasons explained below, the United States respectfully requests that the Court sentence defendant Johnson to 60 months in prison and defendant Goldman to 54 months in prison.

I.      **The Stolen Artifact**

The Santa Margarita was one of several ships that set sail from Havana, Cuba, in September of 1622, laden with treasure and destined for Spain.   The ships were caught in a hurricane as they approached the Florida Keys, and the Santa Margarita sank.   The ship's treasure remained buried on the seafloor for hundreds of years.

In 1980, treasure explorer Mel Fisher located part of the Santa Margarita shipwreck, off of the Marquesas in the Florida Keys.   Mel Fisher and his crew found a vast array of historical artifacts and treasures, including several gold ingots that had been forged in South America. Each ingot was unique and bore special marks relating to the size, value, karat-weight, and location of the foundry.



The bars were catalogued by Mel Fisher and his crew, who carefully noted the location of discovery, and the unique markings, size, weight, and quality of each bar.   The bars were later processed by expert archaeologists, who evaluated their historical significance by examining the assayer markings, karat stamps, foundry marks, and royal seals that had been placed on each bar. The bars were also valued by experts.

The Mel Fisher Maritime Heritage Museum was established as a non-profit educational institution, and was entrusted with donations of select treasures that had been discovered by Mel Fisher and his crew.   One item that was given to the Museum was a gold bar discovered on the Santa Margarita wreck.   That bar, which was given serial number 27 in the Santa Maria discovery catalogue, had an estimated market value of $441,612 at the time it was given to the Museum, as reflected in the below provenance documentation:



Once entrusted with this treasure, the Museum had a creative idea that would further its goal of educating Key West's visitors about the distinctive history of shipping in the Florida

Keys.   The Museum had a custom display case created that would enable visitors to reach in and not only touch, but lift and examine the precious historical artifact for themselves.



For nearly thirty years, the "Lift a Gold Bar" exhibit served as the Museum's centerpiece. On August 18, 2010, the defendants stole that bar.   In the days and weeks that followed, they chopped it into tiny pieces and sold it for scrap gold.   All that remains of the Museum's gold bar is a tiny fragment that the defendants sold, which makes up less than 2.5% of the total bar that they stole:



4

In short, contrary to the defendant's contentions in their sentencing memoranda, the gold bar stolen and destroyed by the defendants was more than a simple chunk of gold.   It was a priceless historical artifact that, because of these defendants' callous actions, has been lost to history.

## II.    Sentencing Guidelines Ranges

Based on a criminal history category I and a total offense level of 24, defendant Goldman's Sentencing Guidelines Range is 51-63 months in prison if he is given a mitigating role adjustment.   Based on a criminal history category II and a total offense level of 25, defendant Johnson's Sentencing Guidelines Range is 57-71 months in prison.

Defendant Johnson is disputing the bar's value, which for both defendants constitutes a large driver of their Sentencing Guidelines range.   Defendant Johnson contends that the value of the bar should be limited to approximately $100,000, although he agreed in his factual proffer that the bar is worth $556,000.

Around the time that the bar was stolen, similar non-famous bars from 17th-century Spanish shipwrecks sold for between $100,000 and $160,000.   Considering the excellent condition that this bar was in at the time that it was stolen, its weight and quality, and its status as the most famous exhibit of the Mel Fisher Maritime Heritage Museum for over thirty years, the bar would have fetched a far greater price had it been sold at auction.   For these reasons, the United States submits that the bar was worth at least $550,000, if not more.

Regardless of the bar's value as determined by the Court, for the reasons explained below, the United States submits that the Defendants should be given a sentence within the Guidelines Ranges outlined above.   Therefore, if the Court does not find that the bar is worth

$550,000, the United States will be asking for a variance to account for factors unique to this case that are not considered by the Sentencing Guidelines.

**III.      The Section 3553(a) Factors require a substantial sentence in this case.**

The appropriate sentence in this case is 54 months for defendant Goldman and 60 months for defendant Johnson.   This sentence is sufficient but not greater than necessary to satisfy the Section 3553(a) factors in this case.

First, looking to the nature and circumstances of the offense, see 18 U.S.C. § 3553(a)(1), a significant sentence is warranted.   The defendants plotted and worked together to steal an invaluable piece of history from the Mel Fisher Museum.   Contrary to their contentions, this was not a last minute plan.   Indeed, as testified to by witness Ray Moore at Goldman's trial, defendant Johnson had attempted to recruit him to assist in the theft months before it took place.   Moreover, the extensive surveillance footage and other evidence presented at trial showed that this was a planned, concerted effort to target the Mel Fisher Museum and its treasure.   And after the theft, the Defendants destroyed the priceless artifact and sold it piece by piece in order to profit from their deed.   They then remained silent about their crime for over five years, ignoring the Museum's repeated pleas for help in recovering their artifact, until an anonymous tip led to their identification and apprehension.   This course of conduct cries out for a substantial punishment.

Indeed, two of these factors – which are essential considerations in arriving at a just punishment in this case – are nowhere considered in the Guidelines.   First, the fact that the defendants destroyed an object of cultural heritage is nowhere accounted for in the Guidelines. And second, the fact that the defendants remained in hiding for so long after the crime and refused to come forward in spite of repeated requests for information is not a factor included in the Guidelines calculation.   These factors underscore the defendants' lack of remorse for their crime

and the harm that their crime caused.   Accordingly, these factors counsel in favor of a high-end or above-Guidelines sentence.

Second, the characteristics of the Defendants, 18 U.S.C. § 3553(a)(1), also support a significant sentence.   Defendant Johnson has numerous prior convictions, including a conviction for first degree murder.   Defendant Goldman was convicted of reckless driving three years after this crime, and the facts in the PSI reflect that he had been drinking while driving during that offense, thus putting lives in danger.   It is difficult to see how these factors – which includes the most serious possible crime on Johnson's part and continuing, dangerous criminal conduct after the crime in question by Goldman – could support a below-Guidelines sentence.

Strangely, both defendants point to their alleged attempts to assist law enforcement as mitigating factors in this case.   It is not disputed that these defendants both remained silent for years after the crime, and did not come forward in a timely manner to accept responsibility for their actions or to assist the victim in recovering any portion of their precious artifact.   After the anonymous tipster identified Goldman as the lookout in this crime, Goldman – in a largely false and self-serving statement – identified his co-conspirator as "Rick" or "Rich" (he claimed he couldn't remember the name), and gave an approximate location where "Rick" or "Rich" may have lived several years before.   Through this information, law enforcement was able to identify defendant Johnson.   However, after this partial cooperation, defendant Goldman retracted his prior statement, claimed no involvement in the theft, and forced the United States to prove his guilt at trial.

Defendant Johnson fled to California after this crime, and was arrested nearly eight years after the crime.   Johnson did timely plead and accept responsibility for his actions, and he also assisted the United States in recovering a tiny portion of the stolen bar.   However, he also lied

extensively about his role in the offense and about how the theft came about in a self-serving attempt to garner a lesser sentence.   If anything, the "cooperation" attempts by these defendants further shows their inability to accept responsibility for their crimes.

Third, a substantial sentence in this case is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.   The severity of this crime and the fact that the defendants remained in hiding for years afterward, ignoring repeated pleas for assistance in recovering the bar from the Museum, underscores the need for a significant sentence.

Fourth and finally, along similar lines, a substantial sentence is necessary to deter others similarly situated from engaging in this type of criminal conduct.   At bottom, as both defendants readily admit, this was a crime that was committed for financial gain.   The defendants stole this priceless historical artifact because they wanted to cut it up and sell it, and because they thought they would get away with it.   They then remained silent about the crime for years, thinking they had gotten away with the crime and not caring to assist the Museum in locating the priceless object they had destroyed.   A significant sentence is necessary to deter these defendants and others similarly situated from engaging in this type of for-profit crime.

## IV.   CONCLUSION

For the reasons stated above, the United States respectfully requests that Defendant Goldman be sentenced to 54 months in prison, and Defendant Johnson be sentenced to 60 months in prison.

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

By:     /s/ Daniel J. Marcet
Daniel J. Marcet
Assistant United States Attorney
Florida Bar No. 0114104
99 Northeast 4th Street
Miami, FL. 33132-2111
Tel: (305) 961-9099
Daniel.Marcet@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the

Court using CM/ECF.

*s/Daniel J. Marcet*
Daniel J. Marcet
Assistant United States Attorney